IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HIS STORY DEVELOPMENT LLC | § | CASE NO. 24-40288 |
| | § | (Chapter 11) |
| DEBTOR | § | |

**HIS STORY DEVELOPMENT LLC'S**
**PLAN OF REORGANIZATION UNDER SUBCHAPTER V OF CHAPTER 11**


QUILLING, SELANDER, LOWNDS,
WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas  75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Fax)

By:  _/s/ John Paul Stanford_
       John Paul Stanford
       State Bar No. 19037350

ATTORNEYS FOR DEBTOR AND
DEBTOR-IN-POSSESSION


DATED:     May 6, 2024

# ARTICLE I
## BUSINESS OPERATIONS OF THE DEBTOR AND BACKGROUND OF FILING

The Debtor was organized for the specific purpose to produce and present the theatrical presentation of *His Story: The Musical*, a contemporary pop/rock/rap lyrical story of Jesus at a long-term venue in Grandscape Texas, in the The Colony, Texas.  The Debtor acquired a state-of-the art 1300 seat theater tent to serve as a destination location for a long-term theatrical run. Unfortunately, the production had to close after a short run of only six weeks.  With no more performances, the tents and supporting equipment and furnishings sat unused at the Grandscape location.  The Debtor attempted to find alternative uses for the facility to generate cash flow, but all efforts were unsuccessful. The Debtor has ceased all operations and will have no future earnings.

Events since the bankruptcy filing:   The Debtor filed its voluntary petition under Subchapter V of Chapter 11 of the bankruptcy code on February 6, 2024. Along with filing its bankruptcy schedules and statement of financial affairs and appearing at the meeting of creditors on March 7, 2024, the Debtor has filed applications to employ its counsel Quilling Selander, Lownds, Winslet and Moser, PC and to engage Rosen Systems to conduct a liquidation auction of some of its assets. Rosen Systems conducted an auction of all of the Debtor's equipment and furnishings between March 7 – 14, 2024.  The Debtor received $24,834.28 from the auction.  The Debtor also filed a motion to sell the tents for $185,000 including the 1300 seat tent and several smaller tents and accessories.  The sale of the tents saved the Debtor the cost of removing the tents itself – estimated to be at least $100,000 – and the cost of storage as well as relieving the Debtor of the obligation to maintain expensive insurance.   At the time this Plan, those funds were being held in escrow pending the successful and complete removal of the tents from Grandscape.

With the complete sale of all of the Debtor's physical assets, the only remaining assets of the Debtor consists of its Intangible Rights defined below.

The Debtor filed the instant case in order to orderly liquidate its assets and distribute the proceeds to its creditors. This Plan provides an orderly manner to satisfy, or otherwise, distribute the sale proceeds to the Debtor's creditors.  The Debtor believes that the terms of this Plan will maximize distributions to the creditors of the Debtor. The Debtor is seeking the confirmation of this Plan as a consensual plan, or if necessary, as a non-consensual Plan as set forth in section 6.4 below.

A Liquidation Analysis is included herein in Article VI.

## ARTICLE II
## DEFINITIONS AND RULES OF CONSTRUCTION

### A.    Defined Terms.

In addition to such other terms as are defined in other sections of this Plan, the following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural, masculine and feminine forms of the terms defined).

2.1.    "Administrative Bar Date" shall refer to the deadline to file Claims for Allowance as an Administrative Expense set forth in section 4.1(c) of the Plan.

2.2.    "Administrative Expense" shall include any cost or expense of administration of the Debtor's chapter 11 case allowed under subsections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estate of the Debtor, any actual and necessary expenses of operating the business of the Debtor, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 and 503 of the Bankruptcy Code, and any fees or charges assessed against the Estate of the Debtor under section 1930, chapter 123 of title 28 of the United States Code.

2.3.    "Allow" or "Allowance," when used with respect to a Claim, shall mean the process of determining whether a Claim is to be Allowed pursuant to this Plan.

2.4.    "Allowed," when used with respect to a Claim (other than an Administrative Expense), shall mean a Claim (a) to the extent it is not Contested; or (b) a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (i) as to which no Objection was filed by the Objection Deadline, or (ii) as to which an Objection was filed by the Objection Deadline, to the extent, if any, such Claim is ultimately followed by a Final Order; provided, however, if a Claim is to be determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court. With respect to an Administrative Expense (other than Ordinary Course Claims), such Claims will be Allowed when a Final Order has been entered by the Bankruptcy Court allowing such Administrative Expense Claim.

2.5.    "Assets" shall include all right, title, and interest in and to all property of every type or nature owned or claimed by the Debtor or the Estate as of the Effective Date, whether real or personal, tangible or intangible, and wherever located, and including, but not limited to, all property of the Estate as defined in section 541 and, as applicable, section 1186 of the Bankruptcy Code. Without limiting the generality of the foregoing, this shall include all of the following: Estate Claims, Avoidance Actions, Estate Defenses, Estate Cash, Estate Accounts Receivable, Estate Insurance and Estate Contracts.

2.6.    "Avoidance Action" shall mean a cause of action and rights assertable by a Debtor against any Person, including but not limited to any Creditor, pursuant to Chapter 5 of the Bankruptcy Code, including without limitation, actions brought, or which may be brought, under sections 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code, and including all

causes of action, rights and remedies assertable by the Estate pursuant to section 544 of the Bankruptcy Code.

2.7.    "Ballot" shall mean the form of ballot provided to holders of Claims or Interests entitled to vote pursuant to Bankruptcy Rule 30179d), by which each such holder may accept or reject the Plan.

2.8.    "Bankruptcy Case" shall mean In re: His Story Development LLC, Case No. 24-40288-11 before the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

2.9.    "Bankruptcy Code" shall mean the Bankruptcy Reform Act of 1978, as amended and codified at Title 11 of the United States Code.

2.10.    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

2.11.    "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure, as amended from time-to-time, including all applicable local rules of the Bankruptcy Court, and any reference to a specific rule is a "Bankruptcy Rule."

2.12.    "Bar Date" is the date established by the Bankruptcy Court, including through any standing order, for filing proof of Claim or proofs of Interest which, in this Bankruptcy Case, was April 16, 2024; provided, however, that if the Bankruptcy Court has ordered an extension of the time by which a particular Creditor may file a proof of Claim or proof of Interest, the date set with respect to such Creditor shall be the Bar Date with respect to such Creditor, but only as to such Creditor.

2.13.    "Beneficiary" shall mean any Person that is the holder of an Allowed Claim entitled to receive Distributions from the Debtor pursuant to this Plan.

2.14.    "Business Day" shall mean any day other than Saturday, Sunday, a legal holiday, or a day on which national banking institutions in Texas are authorized or obligated by law or executive order to close.

2.15.    "Cash" shall mean cash and cash equivalents, including funds held in a checking or money market account.

2.16.    "Claim" shall mean (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fox, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, legal, equitable, secured or unsecured, or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, secured or unsecured.

2.17.   "Claimant" shall mean the holder of a Claim.

2.18.   "Class" shall mean a category or group of holders of Claims or Interests as designated in Article III of the Plan.

2.19.   "Collateral" shall mean any Asset subject to a valid and enforceable Lien to secure payment of a Claim, including any right of offset asserted against any Asset.

2.20.   "Confirmation Date" shall mean the date of entry of the Confirmation Order.

2.21.   "Confirmation Hearing" shall mean the hearing, as it may be continued from time-to-time, conducted by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider confirmation of the Plan, as the same may be amended, modified, or supplemented.

2.22.   "Confirmation Order" shall mean the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

2.23.   "Contested," when used with respect to a Claim, shall mean a Claim: (a) that is listed in the Schedules of a Debtor as disputed, contingent, and/or unliquidated, or in the amount of "$0.00" or "Unknown"; (b) that is listed in the Schedules of a Debtor as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; (c) that is not listed in the Schedules of a Debtor, regardless of whether or not a proof of Claim has been filed with the Bankruptcy Court; (d) as to which an Objection has been or may be timely filed and which Claim has not been Allowed by a Final Order; or (e) for which the proof of Claim is filed after the applicable Bar Date; provided, however, that all Claims shall be deemed as Contested until the applicable Objection Deadline has passed.  In addition, any Claim which is subject to an Objection or other pleading seeking either subordination (whether equitable or otherwise) or recharacterization of such Claim, including pursuant to section 510(c) of the Bankruptcy Code, shall likewise be deemed to constitute a Contested Claim until such Objection has been resolved by a Final Order.

2.24.   "Creditor" shall have the same meaning as in section 101(10) of the Bankruptcy Code.

2.25.   "Debtor" shall mean His Story Development LLC.

2.26.   "Disallowed" when used with respect to all or any part of a Claim or Interest, shall mean that portion of a Claim or Interest to which an Objection or motion to disallow has been sustained by a Final Order or, as to any Contested Claim, any portion thereof which is not Allowed by a Final Order of the Bankruptcy Court.

2.27.   "Disposable Income" shall have the meaning provided for such term in section 1191(d) of the Bankruptcy Code.

2.28.    "Distribution" shall refer to and include any distribution of any property pursuant to this Plan.

2.29.    "Effective Date" shall mean the first Business Day which is fourteen (14) days after the Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is at least fourteen (14) Business Days after the Confirmation Date, and upon which all conditions to the effectiveness of the Plan set forth in Article XII below are satisfied.

2.30.    "Equitable Subordination" shall be broadly construed and shall encompass any right or remedy to equitably subordinate or recharacterize as equity any Claim, including without limitation any such right or remedy pursuant to section 510(c) of the Bankruptcy Code.

2.31.    "Estate" shall mean the bankruptcy estate of the Debtor in this Bankruptcy Case.

2.32.    "Estate Claims" shall include any and all Claims or causes of action or rights of action held by an Estate against any Person, whether based on a contract, applicable tort or common law, or any law, statute or regulation of any governmental body or entity, including without limitation all Avoidance Actions, causes of action, rights of action or any right to recover money or property from any Person, as well as all legal and equitable rights and remedies incident to any of the foregoing. Estate Claims shall also include all applicable privileges in relation thereto, including the attorney-client privilege and the work product privilege.

2.33.    "Estate Defenses" shall refer to all defenses, affirmative defenses, counterclaims, or rights of offset or recoupment by an Estate against any Person, including without limitation all affirmative defenses referenced in Fed. R. Civ. Pr. 8(c). Estate Defenses shall also include all rights and remedies for Equitable Subordination. Estate Defenses shall also include all applicable privileges with respect thereto, including the attorney-client privilege and work produce privilege.

2.34.    "Estate Insurance" shall include any insurance policy or interest in an insurance policy in which an Estate has an interest or rights.

2.35.    "Executory Contract" shall refer to any executory contract or unexpired lease which is subject to section 365 of the Bankruptcy Code.

2.36.    "Estate Professional" shall mean those Persons employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328 and 1103 of the Bankruptcy Code or who are entitled to compensation or reimbursement pursuant to sections 503(b)(3)(D) or 506(b) of the Bankruptcy Code.

2.37.    "Final Decree" shall mean an order or judgment of the Bankruptcy Court or any other court or adjudicative body, as to which the time to appeal or seek rehearing or petition for certiorari shall have expired, and which such order or judgment shall no longer be subject to appeal, rehearing, or certiorari proceeding.

2.38.   "Final Order" shall mean an order or judgment of the Bankruptcy Court or any other court or adjudicative body, as to which the time to appeal or seek rehearing or petition for certiorari shall have expired, and which such order or judgment shall no longer be subject to appeal, rehearing, or certiorari proceeding.

2.39.   "General Unsecured Claim" shall mean a Claim which is not a Secured Claim, is not an Administrative Expense and is not entitled to priority of distribution pursuant to section 507 of the Bankruptcy Code, and includes any Rejection Claims pursuant to section 502(g) of the Bankruptcy Code.

2.40.   "Governmental Bar Date" shall mean August 5, 2024, the date by which governmental units must file proofs of claim pursuant to section 502(b)(9) and Bankruptcy Rule 3002(c)(1).

2.41.   "Governmental Unit" shall have the same meaning as in section 101(27) of the Bankruptcy Code.

2.42   "Intangible Rights" are those assets more fully described in section 7.5 of the Plan.

2.43.   "Interest" shall mean any equity interest in the Debtor.

2.44.   "Lien" shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any Asset, including any right of offset asserted against any Asset.

2.45.   "Objection" shall include (a) an objection to the allowance of a Claim interposed by any party entitled to do so within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, and (b) as to any Taxing Authority, shall include a proceeding commenced under section 505 of the Bankruptcy Code to determine the legality or amount of any tax. Any pleading seeking to subordinate or recharacterize a Claim shall also constitute an Objection.

2.46.   "Objection Deadline" shall mean the later of (a) ninety (90) days following the Effective Date, unless otherwise extended by order of the Bankruptcy Court, or (b) as to any Rejection Claim filed after the Effective Date, ninety (90) days after the date on which the proof of Claim reflecting the Rejection Claim is filed.

2.47.   "Person" shall include any individual, any type of incorporated or registered business or nonprofit entity, including any corporation, general partnership, limited partnership, limited liability company, limited liability partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, governmental entity or unit, or any political subdivision thereof, or any other entity of every type or nature.

2.48.   "Petition Date" shall mean February 6, 2024.

2.49.    "Plan" shall mean this Plan of Reorganization for the Debtor, either in its present form or as it may be altered, amended, modified, or supplemented from time-to-time.

2.50.    "Priority Claim" shall mean a Claim that is entitled to priority of payment under sections 507(a)(4) through (7) of the Bankruptcy Code.

2.51.    "Priority Tax Claim" shall mean a Claim entitled to priority of payment pursuant to section 507(a)(8) of the Bankruptcy Code, other than any Property Tax Claims.

2.52.    "Property Tax Claim" shall mean a Claim for Property Taxes.

2.53.    "Property Taxes" shall mean such taxes assessed by any Taxing Authority against any property of the Debtor based on the value thereof, as allowed by applicable state and local law.

2.54.    "Pro Rata Percentage" shall mean, as to the holder of a specific Claim, the ratio that the amount of such holder's Claim bears to the aggregate amount of all Claims.

2.55.    "Rejection Claim" shall mean a Claim arising under section 502(g) of the Bankruptcy Code as a consequence of the rejection of any Executory Contract.

2.56.    "Schedules" shall mean the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by section 521 of the Bankruptcy Code including any amendments and attachments thereto.

2.57.    "Secured Claim" shall mean (a) a Claim secured by a Lien against an Asset, to the extent such Lien is valid, perfected and enforceable under applicable non-bankruptcy law and is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and which is duly Allowed, but only to the extent that such Claim does not exceed the value of the Assets which the Bankruptcy Court finds are valid security for such Claim (except, if the holder of such Claim makes the election provided for in section 1111(b)(2) of the Bankruptcy Code, the entire amount of the Claim shall be a Secured Claim), and (b) any valid and enforceable right of offset asserted against a Debtor or any Asset.

2.58.    "Secured Creditor" shall mean the holder of a Secured Claim.

2.59.    "Subchapter V Trustee" shall mean Mark Weisbart.

2.60.    "Subchapter V Trustee Fees" shall mean those fees paid or to be paid to the Subchapter V Trustee pursuant to section 330 of the Bankruptcy Code.

2.61.    "Substantial Consummation" shall mean the day on which the Estate's Assets are transferred to the Debtor.

2.62.   "Taxing Authority" shall include the State of Texas or any subdivision thereof, including without limitation any political subdivision of the State of Texas assessing ad valorem taxes against any of the Assets.

2.63.   "Unclaimed Property" shall mean any Cash, Distribution, payment or any other property unclaimed for a period of sixty (60) days after the date of the applicable Distribution, or such longer period which the Debtor may fix in the exercise of its good faith business judgment.

2.64.   "U.S. Trustee" shall mean the office of the U.S. Trustee for Region 6.

**B.**   **Rules of Interpretation and Construction of Terms**

2.65.   The words "herein," "hereof," and "hereunder" or other words of similar import shall refer to the Plan as a whole and not to any particular article, section, subsection or clause contained in the Plan, unless the context requires otherwise.

2.66.   Whenever from the context it appears appropriate, each term stated in either the singular or plural includes both singular and plural, and pronouns stated in masculine, feminine or neuter form shall include all of the masculine, feminine or neuter form.

2.67.   The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to this Plan, the Confirmation Order and all Plan Documents.

2.68.   References herein to "after notice and hearing" or other similar language shall have the same meaning as in section 102(1) of the Bankruptcy Code. Otherwise, terms used herein that are not specifically defined herein shall have the meaning ascribed to those terms, if any, in the Bankruptcy Code.

2.69.   All Exhibits to the Plan and all Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein. Certain Plan Documents may be filed with the Clerk of the Bankruptcy Court prior to the commencement of the Confirmation Hearing. Holders of Claims and Interests may obtain a copy of the Plan Documents, once filed, by a written request sent to the following address: Quilling, Selander, Lownds, Winslett & Moser, P.C., Attention: John Paul Stanford, 2001 Bryan Street, Suite 1800, Dallas, Texas 75201, Fax Number (214) 871-2111 or via email to jstanford@qslwm.com

2.70.   Reference herein to any agreement, contract, instrument or other document in this Plan shall refer to such agreement, contract, instrument or document as amended, supplemented or modified.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

3.1.   The following is a designation of the Classes of Claims and Interests pursuant to this Plan. A Claim shall be deemed classified in a particular Class only to the extent that the Claim

qualifies within the description of that Class. A Claim is included in a particular Class only to the extend that the Claim is an Allowed Claim within that Class.

3.2.    <u>Claims and Interests</u>. Claims and Interests against or in the Debtor are classified under this Plan as follows:

(a) <u>Class 1</u> – Secured Claim of Stage Director & Choreographers

(b) <u>Class 2</u> – Secured Claim of Laura Lazarus

(c) <u>Class 3</u> – Secured Claim of Matt Churchill Projects LLC

(d) <u>Class 4</u> –  General Unsecured Claims

(e) <u>Class 5</u> – Interest Holders

3.3.    <u>Impaired Classes of Claims and Interests</u>. Classes 2-4 are impaired and entitled to vote on the Plan. Classes 1 and 5 are unimpaired and ineligible to vote on the Plan.

3.4.    <u>Impairment or Classification Controversies</u>. If a controversy arises as to the classification of any Claim or Interest, or as to whether any Class of Claims or Interests is impaired under the Plan, the Bankruptcy Court shall determine such controversy as a part of the confirmation process.

## ARTICLE IV
## TREATMENT OF UNCLASSIFIED CLAIMS

4.1.    Administrative Expenses.

(a)    The Debtor shall pay, in accordance with the ordinary business terms applicable to such expense or cost, the reasonable and ordinary expenses incurred in operating the Debtor's business or administering the Estate before the Effective Date ("<u>Ordinary Course Claims</u>"). The remaining provisions of this section 4.1 shall not apply to the Ordinary Course Claims, except that if there is a dispute relating to any such Ordinary Course Claim, the Debtor may move the Bankruptcy Court to apply the provisions of Article X below relating to Contested Claims and require the holder of the Contested Ordinary Course Claim to assert such Claim through this Bankruptcy Case.

(b)    Each holder of an Allowed Administrative Expense (other than Ordinary Course Claims and Administrative Expense Claims by Estate Professionals), shall receive (i) the amount of such holder's Allowed Administrative Expense in one Cash payment on the later of the Effective Date or the tenth (10th) Business Day after such Administrative Expense becomes an Allowed Administrative Expense, or (ii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Debtor, or as otherwise ordered by the Bankruptcy Court.

(c)     Unless the Bankruptcy Court orders to the contrary or the Debtor agree to the contrary in writing, the holder of a Claim for an Administrative Expense, other than such a Claim by an Estate Professional, an Ordinary Course Claim, or an Administrative Expense which is already Allowed, shall file with the Bankruptcy Court and serve upon the Debtor and its counsel a written notice of such Claim for an Administrative Expense within thirty (30) days after the Effective Date. This deadline is the Administrative Bar Date. Such notice shall include at a minimum: (i) the name, address, telephone number and fax number (if applicable) or email address of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim. Failure to timely and properly file and serve such notice by or on the Administrative Bar Date shall result in such Claim for an Administrative Expense being forever barred from receiving any Distribution.

(d)     A Claim for an Administrative Expense, for which a proper notice was filed and served under subsection 4.1(c) above, shall become an Allowed Administrative Expense if no Objection is filed within thirty (30) days from the filing and service of such notice. If a timely Objection is filed, the Claim shall become an Allowed Administrative Expense only to the extent allowed by a Final Order.

(e)     The proceedings contained in subsections 4.1(a), (c) and (d) above shall not apply to Administrative Expense Claims asserted by Estate Professionals, who shall each file and submit an appropriate final fee application to the Bankruptcy Court no later than sixty (60) days after the Effective Date.

(f)     A Claim for an Administrative Expense by an Estate Professional in respect of which a final fee application has been property filed and served shall become an Allowed Administrative Expense only to the extent allowed by Final Order and, if so Allowed, shall be paid in full either on the Effective Date or pursuant to a written agreement between the Claimant and the Debtor.

(g)     Professional fees and expenses to any Estate Professional incurred on or after the Effective Date may be paid by the Debtor without necessity of application to or order by the Bankruptcy Court.

(h)     If the Debtor asserts any Estate Claims as counterclaims or defenses to a Claim for an Administrative Expense, the Administrative Expense Claim shall be determined through an adversary proceeding before the Bankruptcy Court. The Bankruptcy Court shall have exclusive jurisdiction to adjudicate and Allow all Claims for any Administrative Expense.

4.2.    Subchapter V Trustee's Fees. The Debtor shall pay the Subchapter V Trustee Fees incurred pursuant to sections 1183 and 330 of the Bankruptcy Code which are due pursuant to a Final Order granting the Subchapter V Trustee Fees entered by the Bankruptcy Court. Such fees will be paid either upon approval by the Bankruptcy Court or by agreement between the Debtor and the Subchapter V Trustee.

4.3.    <u>Priority Tax Claims</u>. Any holder of an Allowed Priority Tax Claim within the meaning of Bankruptcy Code Section 507(a)(8) will be paid in full within 60 days from the Effective Date with interest thereon at the statutory rate of interest for such claims per annum. Proofs of Claim for a priority claim have been filed by the Comptroller of Public Accounts for $2,000 and $3,810.48.

## ARTICLE V
## <u>TREATMENT OF CLAIMS AND INTERESTS</u>

Claims and interests are classified by priority or type. The treatment described below shall apply to all Claims or Interests of the given Class against or in the Debtor.

5.1.    <u>Class 1 – Secured Claim of Stage Directors & Choreographers Society</u>. The Class 1 Claimant shall retain its liens in its Collateral. The Class 1 Claimant is holding a secured claim of between $100 is secured by a $20,000 bond. Upon the Effective Date, the Class 1 Claimant may offset its claim by the amount of the bond and then remit the balance to the Debtor. Class 1 is not impaired.

5.2.    <u>Class 2 – Secured Claim of Laura Lazarus</u>. The Class 2 Claimant shall retain her liens in her Collateral.  Laura Lazarus has a claim in the amount of $1,475,843 and holds a first lien on all assets of the Debtor arising from a series of loans made by the Class 2 Claimant to the Debtor to allow it to meet its financial obligations.   The Class 2 Claimant secured status is derived from a Financing Statement (UCC-1) filed with the Texas Secretary of State on July 25, 2023.  For purposes of distribution to the Class 2 Claimant, her secured claim will be calculated from the loans disbursed to the Debtor after that date, in the amount of $284,094. The Class 2 Claimant shall receive a distribution of her secured claim in the Debtor's assets from the sale proceeds subject to the determination of the priority of her lien in the Debtor's assets. The first $25,000 of the sale proceeds subject to the Class 2 Claimant shall be carved-out and distributed to the Class 4 General Unsecured Claimants. To the extent that the Class 2 Claimant's full claim of $1,475,843 is not paid in full from the sale proceeds of the Debtor's assets, the unpaid balance will be included in the Class 4 General Unsecured Creditors and receive the treatment afforded that class.  The Class 2 Claimant shall have credit bidding rights at future auctions.

5.3.    <u>Class 3 – Secured Claim of Matt Churchill Projects LLC</u>.   The Class 3 Claimant shall retain its liens in its Collateral. The Class 3 Claimant asserts a claim in the amount of $223,802.62 alleging such claim is secured by a Texas constitutional mechanic's lien arising from a contract with the Debtor.  The Debtor disputes the amount and the secured status of this claim. The priority of the Class 3 claimant's secure claim, if any, shall be determined by the court.  The Class 3 Claimant shall receive a distribution of its secured claim in the Debtor's assets from the sale proceeds subject to the determination of the priority of its lien in the Debtor's assets.  The first $25,000 of the sale proceeds subject to the Class 2 Claimant shall be carved-out and distributed to the Class 4 General Unsecured Claimants.  To the extent that the Class 3 Claimant's claim is not paid in full from the sale of the Debtor's assets, the unpaid balance will be included in the Class 4 General Unsecured Creditors and receive the treatment afforded that class.  The Class 3 Claimant shall have credit bidding rights at future auctions.

5.4.    Class 4 — General Unsecured Claims. The Class 4 Claims include all General Unsecured Claims, the unsecured portion of the Class 2 and Class 3 claimants, and all other Claims not specifically provided for elsewhere herein.  The Class 4 claims of unsecured creditors are impaired and shall receive a pro rata share of the $25,000 carved out of the secured claimants' interest in the Debtor's assets.  Within 30 days of the sale of the last property, the Debtor shall prepare a schedule of the remaining unpaid Class 4 claims and calculate payment on a pro rata basis and deliver the payment schedule to the members of Class 4 with notice of the amount each Class 4 claimant shall be paid with instructions to file objections, if any, within 30 days of the mailing of the payment schedule. Once the objection period has run, and there are no unresolved objections, the Debtor shall disburse the sale proceeds per the schedule to the Class 4 claim holders.

5.6    Class 5 – Interest Holders. Holders of Interests in the Debtor shall retain such Interests following the Effective Date and shall receive a distribution only in the event that all senior claims are paid in full with interest.  The Class 5 Interest Holders do not vote on the Plan.


# ARTICLE VI
## ACCEPTANCE OF REJECTION OF PLAN

6.1.    Classes Entitled to Vote. Each impaired Class of Claims entitled to vote shall separately vote to accept or reject the Plan. Any unimpaired Class shall not be entitled to vote to accept or reject the Plan. Any unimpaired Class is deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

6.2.    Class Acceptance Requirement. A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.

6.3.    Elimination of Vacant Classes. Any Class of Claims that is not occupied as of the date of the commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

6.4.    Request Pursuant to Section 1191(b). This section shall constitute the request by the Plan proponents, pursuant to section 1191(b) of the Bankruptcy Code, for the Bankruptcy Court to confirm this Plan notwithstanding the fact that the requirements of section 1129(a)(8), (a)(10) or (a)(15) of the Bankruptcy Code have not been met.

(a)    Application of Special Rule Pursuant to Section 1191(e). As applicable, this subsection shall note the application of the special rule by the Plan proponents, pursuant to section 1191(e) of the Bankruptcy Code, for the Bankruptcy Court to confirm this Plan under Section 1191(b) of the Bankruptcy Code as necessary.

6.5.   **Liquidation Analysis**: Section 1129(a)(7) of the Bankruptcy Code requires that a Chapter 11 plan of reorganization must provide at least as much value to each Impaired Creditor as could be realized in a liquidation under Chapter 7 of the Bankruptcy Code.

In determining whether the requirements of Section 1129(a)(7) of the Bankruptcy Code have been met, the first step is to determine the dollar amount that would be generated from a hypothetical liquidation of the Debtor's assets in Chapter 7. Such amounts must then be reduced by the costs and expenses of the liquidation. Further reductions would be required to eliminate cash and asset liquidation proceeds that would be applied to Secured Claims and amounts necessary to satisfy priority Claims that are senior to general Unsecured Claims (including Administrative Expense Claims that may result from the termination of the Debtor's business and the liquidation of its assets).

The Debtor's assets consist of cash on hand, mostly from the sale proceeds of the Debtor's personal property and tents, totaling $243,090.48.  The only remaining assets are the intangible rights more fully described in Section 7.5.   The amount the bankruptcy estate would receive in a forced liquidation under Chapter 7 for these rights would be no more, and likely less, than what the Chapter 11 Debtor would be able to generate.  In a chapter 7 liquidation, the unsecured creditors would not receive a $25,000 carve out from the secured creditors. Thus, in Chapter 7 proceeding, it is likely that Unsecured creditors would receive nothing. Even if the sale of the intangible rights generate sufficient proceeds to pay off the secured creditors and the cost of administration, to be able to make a distribution to the unsecured creditor class, the class will still receive more under the chapter 11 Plan due to the $25,000 carve-out.  Moreover, the administrative cost of a chapter 7 liquidation, on top of the costs incurred in the chapter 11 would result in higher costs in a chapter 7 proceeding. Thus, the unsecured creditor class will receive a better return under the Chapter 11 Plan, then in a Chapter 11 proceeding.

## ARTICLE VII
## MEANS OF IMPLEMENTATION OF THE PLAN

7.1.   <u>Transfer of Assets</u>. As of the Effective Date, all Assets of the Debtor shall be vested in the Debtor. The Assets shall be vested in the Debtor free and clear of all Liens, Claims, rights, Interests, and charges, except as expressly provided in this Plan.

7.2.   <u>Actions by the Debtor to Implement Plan</u>. The entry of the Confirmation Order shall constitute all necessary authorization for the Debtor to take or cause to be taken all actions necessary or appropriate to consummate, implement or perform all provisions of this Plan on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation.  No order from the court will be required for the Debtor to sell the remaining properties, to employ real estate brokers in that effort or pay closing costs.

7.3.   <u>Continued Existence of the Debtor</u>. Except as otherwise provided herein, the Debtor shall continue to exist after the Effective Date, with all powers available to such person or legal

entity, as applicable, in accordance with applicable law and pursuant to their constituent documents. Upon the Effective Date, the Debtor may, within its sole and exclusive discretion, take such action as permitted by applicable law and its constituent documents as it determines is reasonable and appropriate.

7.4.    <u>Management of the Debtor</u>. From and after the Effective Date, the Debtor shall be managed in accordance with applicable law. The implementation of the Plan and management of the Debtor shall continue to be led by Bruce Lazarus the Managing Member of Evergreen Five LLC, the Managing Member of the Debtor.

7.5.    <u>Source of Funding for Operations and Plan Obligations</u>. The Debtor has liquidated all of its physical assets resulting in cash and received total sale proceeds of $243,091.48.  The obligations under the Plan shall be funded by distribution of the cash and sale proceeds of all assets of the Debtor.  The only remaining assets of the Debtor consists of the "**Intangible Rights**" as follows:

> Rights to share in author's income at 31.5% of author's sales for 15 years from June 18, 2023, less standard agency commissions, from subsidiary rights (including motion picture, television, internet, stage  licensing, radio, cast and concept albums)

> Television Commercials and promotional videos: - https://www.youtube.com/watch? v=WUpocVq7i7c&t=1s - https://www.youtube.com/watch? v=HwXZFXmE2IA - https://www.youtube.com/watch? v=p_TeTG0Wpmg

> Workshop video, Dallas production archival video, unfinished Dallas documentary (subject to good faith negotiations with author and payment of other third party financial obligations)

> Workshop music arrangements, Dallas production music arrangements, radio/internet commercials, Dallas production Cast Album, workshop soundtrack, rehearsal and performance music tracks (subject to good faith negotiations with author and payment of other third party financial obligations)

> Print newspaper ads, billboard, posters, and other outdoor content, press releases, website content, sales brochures, internet and social media content, internet and social media advertisements, photos from workshop, Dallas production and off-stage, documentary, opening night, press, and other media, casting notices, and marketing material

.

7.6.    <u>Post-Effective Date Service List</u>. Pleadings filed by any party-in-interest with the Bankruptcy Court after the Effective Date shall be served on the following Persons (collectively the "<u>Service List</u>"): (i) any Person directly affected by the relief sought in the pleading, (ii) the

U.S. Trustee, (iii) the Subchapter V Trustee; (iv) parties which have filed a Notice of Appearance in this Bankruptcy Case, and (v) the Debtor through its legal counsel.

7.7.    <u>Section 505 Powers</u>. All rights and powers pursuant to section 505 of the Bankruptcy Code are hereby reserved to the Estate and shall be transferred to, and vested in, the Debtor as of the Effective Date.

7.8.    <u>Section 501(c) Powers</u>. All rights and powers to seek or exercise any right or remedy of equitable subordination are hereby reserved to the Estate and shall be transferred to, and vested in, the Debtor as of the Effective Date as Estate Defenses.

7.9.    <u>Section 506(c) Powers</u>. The Estate hereby reserves all rights and powers pursuant to section 506(c) of the Bankruptcy Code, and all such rights shall be specifically transferred to, and vested in, the Debtor.

7.10.    <u>Plan Injunction</u>. The Debtor shall have full power, standing and authority to enforce the Plan Injunction against any Person, either through an action before the Bankruptcy Court or any other tribunal having appropriate jurisdiction.

## ARTICLE VIII
## PROVISIONS GOVERNING DISTRIBUTION

8.1.    <u>Distributions</u>. The Debtor shall be responsible for making Distributions to holders of Allowed Claims.

8.2.    <u>Timing and Amount of Distributions</u>. No Distributions shall be made on account of any Claim until such Claim is Allowed, except as otherwise set forth in this Plan or otherwise ordered by the Bankruptcy Court. No Distribution shall be made on account of any Contested Claim until such Claim is Allowed. Except as expressly set forth in the Plan or in the Confirmation Order, the Debtor shall, in the exercise of its good faith business judgment, determine the timing and amount of all Distributions as expeditiously as reasonable possible. The Debtor may, but shall not be required to, seek approval of, or any other appropriate relief from, the Bankruptcy Court with respect to any of such Distributions. Any Unclaimed Property may be paid into the registry of the Bankruptcy Court or otherwise distributed in accordance with the orders of the Bankruptcy Court.

(a)    **Projected Disposable Income**: The Debtor has ceased operations and expects no future disposable income.  Pursuant to 11 U.S.C. § 1191(c), the Debtor will make payments and distributions from the sale proceeds from the sale its assets.

(b)    **Sale of remaining Assets of the bankruptcy estate**. After the priority lien rights of the secured creditors have been determined, the Debtor shall notice an auction of the Intangible Rights to all parties of interest. The auction shall take place no later than 60-days after the lien rights are determined. The Intangible Rights will be sold free and clear of all claims, liens and encumbrances, but secured creditors with a security interest in the Intangible Rights will be allowed to credit bid at the auction.

(c)  **Credit Bid Rights**.  Secured creditors hold liens (security interests) on specific assets of the debtor. These assets serve as collateral for the debt owed to the creditor.  Examples of secured creditors include mortgage lenders (with a lien on real estate) or equipment financiers (with a lien on specific machinery).  In this case, Laura Lazarus has a blanket lien on all assets and Matt Churchill Projects LLC, is claiming a lien on the sale proceeds of the big top tent and back stage tent including seating.

Section 363(k) of the Bankruptcy Code grants secured creditors the right to credit bid at auctions. Credit bidding allows the secured creditor to bid at an auction using the amount of debt they are owed (the secured claim) as part of their bid.  For example, if a secured creditor is owed $1 million, they can bid up to that amount using their debt as currency. Credit bidding serves several purposes:  It allows secured creditors to protect their interests by potentially acquiring the asset.  It ensures that the creditor receives value equivalent to their claim in the collateral. Other potential bidders (such as investors or buyers) can participate in the auction, but they must outbid the secured creditor's credit bid.

The U.S. Supreme Court clarified credit bid rights in the *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012).  The Court held that secured creditors have an absolute right to credit bid, even in bankruptcy plan sales. This decision ensures that secured creditors can protect their interests during the bankruptcy process.

In summary, credit bidding allows secured creditors to actively participate in bankruptcy asset sales by using their debt as part of the bidding process. It's a critical mechanism for balancing the interests of creditors and debtors in bankruptcy proceedings.

(d)  **Determination of lien rights**. The determination of lien rights shall be determined by the court at the time of the confirmation hearing on the Plan.

8.3.  Means of Cash Payment. Cash payments pursuant to this Plan shall be made by check drawn on, or by wire transfer from, a domestic bank, or by other means agreed to by the payor and payee.

8.4.  Time Bar to Cash Payments. Checks issued in respect of Allowed Claims shall be null and void if not cashed within sixty (60) days of the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Debtor by the holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check shall be made on or before sixty (60) days after the date of issuance of such check or such longer period as the Debtor may fix. After such date, all Claims in respect of void checks shall be discharged and forever barred.

8.5.  Cure Period. Except as otherwise set forth herein, the failure by the Debtor to timely perform any term, provision or covenant contained in this Plan, or to make any payment or Distribution required by this Plan to any Creditor, or the failure to make any payment or perform any covenant on any note, instrument or document issued pursuant to this Plan, shall not constitute an event of default unless and until the Debtor has been given thirty (30) days written notice of such alleged default in the manner provided in this Plan, and provided an opportunity to cure such

alleged default. Until the expiration of such thirty (30) day cure period, the Debtor shall not be in default, and performance during such thirty (30) day cure period shall be deemed as timely for all purposes. Such written notice and passage of the thirty (30) day cure period shall constitute conditions precedent to declaring or claiming any default under this Plan or bringing any action or legal proceeding by any Person to enforce any right granted under this Plan.

8.6.    <u>Distributions after Substantial Consummation</u>. All Distributions of any kind made to any Creditor after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation shall not be subject to relief, reversal or modification by any court unless the implementation of the Confirmation Order is stayed by an order granted under Bankruptcy Rule 8005.

# ARTICLE IX
## RETENTION OF ESTATE CLAIMS AND ESTATE DEFENSES

9.1.    <u>Retention of Estate Claims</u>. Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Claims shall be transferred to, and vested in, the Debtor, both for purposes of seeking an affirmative recovery against any Person and as an offset or defense against any Claim asserted against the Estate or the Debtor. Without limiting the generality of the foregoing, all applicable legal privileges of the Debtor or Estate, including both the attorney-client privilege and the work product privilege, shall be vested in the Debtor which shall be clothed with the sole and exclusive standing and authority to assert any such privilege on behalf of the Debtor or its Estate. All Estate Claims shall be deemed to have been transferred to, and vested in, the Debtor as of the Effective Date based on the entry of the Confirmation Order.

9.2.    <u>Retention of Estate Defenses</u>. Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Defenses shall be transferred to, and vested in, the Debtor. For this purpose, all Estate Defenses are hereby reserved and retained by the Debtor and the Estate, including without limitation all such Estate Defenses available to the Estate pursuant to section 558 of the Bankruptcy Code. All Estate Claims shall be deemed as transferred to, and vested in, the Debtor as of the Effective Date based on the entry of the Confirmation Order.

9.3.    <u>Assertion of Estate Claims and Estate Defenses</u>. The Debtor shall have, and be vested with, the exclusive right, authority and standing to assert all Estate Claims and Estate Defenses for the benefit of the Debtor.

# ARTICLE X
## PROCEDURES FOR RESOLVING AND TREATING CONTESTED CLAIMS

10.1.   <u>Claims Listed in Schedules as Disputed</u>. Any Claim which is listed in the Schedules as unliquidated, contingent, or disputed, and for which no proof of Claim has been timely filed, shall be considered as Disallowed as of the Effective Date without the necessity of any further

action by the Debtor or further order of the Bankruptcy Court other than the entry of the Confirmation Order.

10.2.   <u>Responsibility for Objecting to Claims and Settlement of Claims</u>. The Debtor, as well as other parties in interest shall have standing and authority to either object to or settle and compromise any Objection to any Claim.

(a)   From and after the Effective Date, the Debtor shall have right to (i) file, settle, or litigate to Final Order any Objections to any Claims; and (ii) seek to subordinate any Claim. Any Contested Claim may be litigated to Final Order by the Debtor; and

(b)   From and after the Effective Date, the Debtor shall have the right to settle, compromise or otherwise resolve any Contested Claim without the necessity of any further notice or approval of the Bankruptcy Court. Bankruptcy Rule 9019 shall not apply to any settlement or compromise of a Contested Claim after the Effective Date.

10.3.   <u>Objection Deadline</u>. All Objections to Claims shall be served and filed by the Objection Deadline: <u>provided, however</u>, the Objection Deadline shall not apply to Claims which are not reflected in the claims register, including any alleged informal proofs of Claim. The Debtor may seek to extend the Objection Deadline pursuant to a motion filed on or before the then applicable Objection Deadline. Any such motion may be granted without notice or a hearing. In the event that the Debtor files such a motion and the Bankruptcy Court denies such motion, the Objection Deadline shall nevertheless be automatically extended to that date which is ten (10) Business Days after the date of entry of the Bankruptcy Court's order denying such motion. Any proof of Claim other than one based upon a Rejection Claim and which is filed more than thirty (30) days after the Effective Date shall be of no force and effect and need not be objected to by the Debtor. Nothing contained herein shall limit the right of the Debtor to object to Claims, if any, filed or amended after the Objection Deadline.

10.4.   <u>Response to Claim Objection</u>. If the Debtor files an Objection to any Claim, then the holder of such Claim shall file a written response to such Objection within twenty-four (24) days after the filing and service of the Objection upon the holder of the Contested Claim. Each such Objection shall contain appropriate negative notice advising the Creditor whose Claim is subject to the Objection of the requirement and time period to file a response to such Objection and that if no response is timely filed to the Objection, the Bankruptcy Court may enter an order that such Claim is Disallowed without further notice or hearing.

10.5.   <u>Distributions on Account of Contested Claims</u>. If a Claim is Contested, then the dates for any Distributions as to such Contested Claim shall be determined based upon its date of Allowance, and thereafter Distribution shall be made on account of such Allowed Claim pursuant to the provisions of the Plan. No Distribution shall be made on account of a Contested Claim until Allowed. Until such time as a contingent Claim becomes fixed and absolute by a Final Order Allowing such Claim, such Claim shall be treated as a Contested Claim for purposes of estimates, allocations, and Distributions under the Plan. Any contingent right to contribution or reimbursement shall continue to be subject to section 502(e) of the Bankruptcy Code.

10.6.   <u>No Waiver of Right to Object</u>. Except as expressly provided in this Plan, nothing contained in this Plan or the Confirmation Order shall waive, relinquish, release or impair the Debtor's right to object to any Claim.

10.7.   <u>Offsets and Defenses</u>. The Debtor shall be vested with and retain all Estate Claims and Estate Defenses, including without limitation all rights of offset or recoupment and all counterclaims against any Claimant holding a Claim. Assertion of counterclaims by the Debtor against any Claim asserted against the Estate or the Debtor shall constitute "core" proceedings.

10.8.   <u>Claims Paid or Reduced Prior to Effective Date</u>. Notwithstanding the contests of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by any Debtor prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in the Plan shall preclude the Debtor from paying Claims that the Debtor was authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

## ARTICLE XI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

11.1.   <u>Assumption and Rejection of Executory Contracts</u>. This Plan shall constitute a motion to reject all Executory Contracts except as expressly set forth in this section. All Executory Contracts and Unexpired Leases shall be deemed rejected by the Debtor upon the Effective Date, unless an Executory Contract or Unexpired Lease (a) is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases (b) has been previously assumed or rejected pursuant to an order of the Bankruptcy Court, (c) is identified in this Plan or the Confirmation Order to be assumed, or (d) is the subject of a motion to assume filed on or before the Confirmation Date. The Debtor may file a motion for the assumption or rejection of any Executory Contract or Unexpired Lease at any time through the Effective Date and such motion shall be determined by the Bankruptcy Court thereafter.

11.2.   <u>Cure Claim Payments</u>. To the extent any Cure Claims exist for any Executory Contracts to be assumed hereunder, they shall be treated as provided in this section. Unless the holder of a Cure Claim and the Debtor or Debtor agree in writing to other treatment of such holder's Cure Claim, or other treatment of such holder's Cure Claim is otherwise provided for under the Plan, any cure payment which may be required by section 365(b)(1) of the Bankruptcy Code under an Executory Contract that is assumed under this Plan shall be made by the Debtor on the Initial Distribution Date. Notwithstanding the foregoing, in the event of a dispute regarding the amount of any Cure Claim, the cure of any other defaults, the provision of adequate assurance of future performance, or any other matter pertaining to assumption, the Debtor shall make such cure payments and cure such other defaults and provide adequate assurance of future performance, all as may be required by section 365(b)(1) of the Bankruptcy Code, following the entry of a Final Order by the Bankruptcy Court resolving such dispute.

11.3.   Bar to Rejection Claims. Except as otherwise ordered by the Bankruptcy Court, any Rejection Claim based on the rejection of any Executory Contract shall be forever barred and shall not be enforceable against the Debtor or the Assets unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtor and its bankruptcy counsel, or the Debtor and its counsel, as the case may be, by the earlier or thirty (30) days after the Effective Date or thirty (30) days after entry of the Final Order approving rejection of such Executory Contract.

11.4.   Rejection Claims. Any Rejection Claim not barred by section 11.3 above shall be classified as Class 4, all subject to the provisions of sections 502(b)(6) and 502(g) of the Bankruptcy Code; provided, however, that any Rejection Claim based upon the rejection of an unexpired lease of real property, either prior to the Confirmation Date, upon the entry of the Confirmation Order, or upon the Effective Date, shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. All Rejection Claims shall be deemed as Contested Claims until Allowed. Nothing contained herein shall be deemed as an admission by the Debtor or the Debtor that the rejection of any Executory Contract gives rise to or results in a Rejection Claim or shall be deemed as a waiver by the Debtor of any objections or defenses to any such Rejection Claim if asserted.

11.5.   Reservation of Rights. Nothing contained in the Plan shall constitute an admission by the Debtor that any contract or lease is in fact an Executory Contract or that the Debtor or Estate have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease.

## ARTICLE XII
## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF PLAN

12.1.   Conditions to Confirmation and Effectiveness of Plan. The Plan shall not become effective until the following conditions have been satisfied and which may occur concurrently with the Effective Date: (a) the Confirmation Order shall have been entered, in form and substance acceptable to the Debtor; (b) the necessary Plan Documents have been executed and delivered; and (c) all other conditions specified by the Debtor have been satisfied.

## XIII
## EFFECT OF THE CONFIRMATION OF THE PLAN

13.1.   Compromise and Settlement. Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rules 9019, and in consideration of the classification, potential Distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies subject to, or dealt with, under this Plan, including, without limitation, all Claims against the Debtor or Estate arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted of unasserted, fixed or contingent, arising out of, relating to or in connection with the business or affairs of, or

transactions with, the Debtor or the Estate. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements embodied in this Plan, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interest of the Debtor, the Debtor's bankruptcy Estate, Creditors and other parties-in-interest, and are fair, equitable and within the range of reasonableness. The rights afforded in the Plan and the treatment of all Claims and Interests herein shall be in exchange for, and in complete satisfaction and release of, all Claims and Interests of any nature whatsoever against and in the Debtor, the Estate, and the Assets. Except as otherwise provided herein, all Persons shall be precluded and forever barred by the Plan Injunction from asserting against the Debtor and its affiliates, successors, assigns, the Estate or the Assets any event, occurrence, condition, thing, or other or further Claims or causes of action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

13.2.   <u>Discharge</u>. The terms, covenants and consideration under the Plan shall be in exchange for, and in complete satisfaction, discharge, and release of, all Claims of any nature whatsoever against the Debtor, its Estate, and the Assets. Except as otherwise expressly provided herein, upon the Effective Date or upon the granting of a discharge by the Bankruptcy Court pursuant to section 1192 (the "<u>Order of Discharge</u>"), the Debtor, and its successors in interest and assigns, shall be deemed discharged and released pursuant to section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt it Allowed under section 502 of the Bankruptcy Code; (c) the holder of a Claim based upon such debt has accepted the Plan; or (d) the Claim has been Allowed, Disallowed, or estimated pursuant to section 502(c) of the Bankruptcy Code. The Confirmation Order and, if applicable, the Order of Discharge shall be judicial determinations of discharge of all liabilities of the Debtor, its successors in interest and assigns, other than those obligations specifically set forth pursuant to the Plan.

13.3   <u>PLAN INJUNCTION</u>. THIS SECTION IS REFREED TO HEREIN AS THE "PLAN INJUNCTION." EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, AS OF THE EFFECTIVE DATE ALL HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTOR, THE ESTATE, OR ANY OF THE ASSETS THAT AROSE PRIOR TO THE EFFECTIVE DATE ARE HEREBY PERMANENTLY ENJOINED AND PROHIBITED FROM THE FOLLOWING: (i) THE COMMENCING OR CONTINUATION IN ANY MANNER, DIRECTLY OR INDIRECTLY, OF ANY ACTION, CASE, LAWSUIT OR OTHER PROCEEDING OF ANY TYPE OF NATURE AGAINST THE DEBTOR OR THE ESTATE, WITH RESPECT TO ANY SUCH CLAIM OR INTEREST ARISING OR ACCRUING BEFORE THE EFFECTIVE DATE, INCLUDING WITHOUT LIMITATION THE ENTRY OR ENFORCEMENT OF ANY JUDGMENT, OR ANY OTHER ACT FOR THE COLLECTION, EITHER DIRECTLY OR INDIRECTLY, OF ANY CLAIM OR INTEREST AGAINST THE ESTATE OR THE DEBTOR; (ii) THE CREATION, PERFECTION OR ENFORCEMENT OF ANY LIEN, SECURITY INTEREST, ENCUMBRANCE, RIGHT OR BURDEN, EITHER

DIRECTLY OR INDIRECTLY, AGAINST THE DEBTOR, OR (iii) TAKING ANY ACTION IN RELATION TO THE DEBTOR OR ITS ESTATE, EITHER DIRECTLY OR INDIRECTLY, WHICH VIOLATES OR DOES NOT CONFORM OR COMPLY WITH THE PROVISIONS OF THIS PLAN APPLICABLE TO SUCH CLAIM OR INTEREST. THE PLAN INJUNCTION SHALL ALSO BE INCORPORATED INTO THE CONFIRMATION ORDER.

13.4.   Setoffs. Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, the Debtor may setoff against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before such Distribution is made), any Claims, rights, Estate Claims and Estate Defenses of any nature that the Debtor may hold against the holder of such Allowed Claim, to the extent such Claims, rights, Estate Claims and Estate Defenses against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release of any such Claims, rights, Estate Claims and Estate Defenses that the Estate may possess against such Claimant. In no event shall any Claimant or Interest holder be entitled to setoff any Claim or Interest against any Claim, right, or Estate Claim of the Debtor without the consent of the Debtor unless such holder files a motion with the Bankruptcy Court requesting the authority to perform such setoff notwithstanding any indication in any proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

13.5.   Recoupment. Except as otherwise expressly provided for in the Plan, in no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, account receivable, or Estate Claim of the Debtor unless (a) such holder actually provides notice thereof in writing to the Debtor of its intent to perform a recoupment; (b) such notice includes the amount to be recouped by the holder of the Claim or Interest and a specific description of the basis for the recoupment, and (c) the Debtor have provided a written response to such Claim or Interest holder, stating unequivocally that the Debtor consents to the requested recoupment. The Debtor shall have the right, but not the obligation, to seek an order of the Bankruptcy Court allowing any or all of the proposed recoupment. In the absence of a written response from the Debtor consenting to a recoupment or an order of the Bankruptcy Court authorizing a recoupment, no recoupment by the holder of a Claim or Interest shall be allowed.

13.6.   Turnover. On the Effective Date, any rights of the Estate to compel turnover of Assets under applicable non-bankruptcy law and pursuant to section 542 or 543 of the Bankruptcy Code shall be deemed transferred to and vested in the Debtor.

13.7.   Automatic Stay. The automatic stay pursuant to section 362 of the Bankruptcy Code, except as previously modified by the Bankruptcy Court, shall remain in effect until the Effective Date of the Plan as to the Debtor, the Estate, and all Assets. As of the Effective Date, the automatic stay shall be replaced by the Plan Injunction.

**ARTICLE XIV**
**JURISDICTION OF COURTS AND MODIFICATIONS TO THE PLAN**

14.1.    <u>Retention of Jurisdiction</u>. Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising in, arising under, and related to this Bankruptcy Case and the Plan, to the full extent allowed or permitted by applicable law, including without limitation for the purposes of invoking sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)    To hear and determine any and all objections to, or applications or motions concerning, the allowance of Claims or the allowance, classification, priority, compromise, estimation, or payment of any Administrative Expense;

(b)    To hear and determine any and all applications for payment of fees and expenses pursuant to this Plan to any Estate Professional pursuant to sections 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed under this Plan, and any and all objections thereto;

(c)    To hear and determine pending applications for the rejection, assumption, or assumption and assignment of Executory Contracts and the allowance of Claims resulting therefrom, and to determine the rights of any party in respect to the assumption or rejection of any Executory Contract;

(d)    To hear and determine any and all adversary proceedings, applications, or contested matters, including relating to the allowance of any Claim;

(e)    To hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan in connection with the enforcement of any remedies made available under the Plan, including without limitation, (i) adjudication of all rights, interests or disputes relating to any of the Assets, (ii) the valuation of all Collateral, (iii) the determination of the validity of any Lien or claimed right of offset, and (iv) determinations of Objections to Contested Claims;

(f)    To liquidate and administer any disputed, contingent, or unliquidated Claims, including the Allowance of all Contested Claims;

(g)    To administer Distributions to holders of Allow Claims as provided herein or in the Confirmation Order;

(h)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(i)    To consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation the Confirmation Order;

(j)    To enforce the Plan Injunction against any Person;

(k)    To enter and implement all such orders as may be necessary or appropriate to executed, interpret, construe, implement, consummate, or enforce the terms and conditions of this Plan or the Confirmation Order and the transactions required or contemplated pursuant thereto;

(l)    To hear and determine any motion or application which the Debtor is required or allowed to commence before the Bankruptcy Court pursuant to this Plan or the Confirmation Order;

(m)    To hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan;

(n)    To determine proceedings pursuant to section 505 of the Bankruptcy Code;

(o)    To enter a Final Decree closing this Bankruptcy Case; and

(p)    To determine any other matter or dispute relating to the Estate or the Assets and the Distribution thereof.

14.2.    <u>Abstention and Other Courts</u>. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to this Bankruptcy Case, this Article of the Plan shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

14.3.    <u>Non-Material Modifications</u>. The Debtor may, with the approval of the Bankruptcy Court and without notice to all holders of Claims and Interests, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable. The Debtor may undertake such non-material modification pursuant to this section insofar as it does not adversely change the treatment of the Claim of any Creditor or the Interest of any Interest holder who has not accepted in writing the modification.

14.4.    <u>Material Modifications</u>. Modifications of this Plan may be proposed in writing by the Debtor at any time before confirmation, provided that this Plan, as modified, meets the requirements of section 1193(a) of the Bankruptcy Code. This Plan may be modified at any time after confirmation provided the Plan, as modified, meets the requirements of section 1193(b) or 1193(c), as applicable.

## ARTICLE XV
## MISCELLANEOUS PROVISIONS

15.1.    <u>Severability</u>. Should the Bankruptcy Court determine any provision of the Plan is unenforceable either on its face or as applied to any Claim or Interest or transaction, the Debtor may modify the Plan so that any such provision shall not be applicable to the holder of any Claim

or Interest. Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan, or (b) require the re-solicitation of any acceptance or rejection of the Plan.

15.2.   Oral Agreements; Modification of Plan; Oral Representations or Inducements. The terms of the Plan and Confirmation Order may only be amended in writing and may not be changed, contradicted, or varied by any oral statement, agreement, warranty, or representation. Neither the Debtor nor their attorneys have made any representation, warranty, promise, or inducement relating to the Plan or its confirmation except as expressly set forth in this Plan or the Confirmation Order or other order of the Bankruptcy Court.

15.3.   Waiver. The Debtor shall not be deemed to have waived any right, power, or privilege unless the waiver is in writing and signed by the Debtor. There shall be no waiver by implication, course of conduct or dealing, or through any delay or inaction by the Debtor, of any right pursuant to the Plan, including the provisions of this anti-waiver section. The waiver of any right under the Plan shall not act as a waiver of any other or subsequent right, power, or privilege.

15.4.   Notice. Any notice or communication required or permitted by the Plan shall be given, made, or sent as follows:

(a)   If to a Creditor, notice may be given as follows: (i) if the Creditor has filed no proof of Claim, then to the addressed reflected in the Schedules, or (ii) if the Creditor has filed a proof of Claim, then to the address reflected in the proof of Claim.

(b)   If to the Debtor, notice shall be sent to the Debtor and counsel of record for the Debtor.

(c)   Any Creditor desiring to change its address for the purpose of notice may do so by giving notice to the Debtor of its new address in accordance with the terms of this section.

(d)   Any notice given, made or sent as set forth above shall be effective upon being (i) deposited in the United States Mail, postage prepaid, addressed to the addressee at the address as set forth above; (ii) delivered by hand or messenger to the addressee at the address set forth above; (iii) telecopied to the addressee as set forth above, with a hard confirmation copy being immediately sent through the United States Mail; or (iv) delivered for transmission to an expedited or overnight delivery service such as FedEx.

15.5.   Compliance with All Applicable Laws. If notified by any governmental authority that it is in violation of any applicable law, rule, regulation, or other of such governmental authority relating to its business, the Debtor shall comply with such law, rule, regulation, or order; provided, however, that nothing contained herein shall require such compliance if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings.

15.6.   Duties to Creditors. No agent, representative, accountant, financial advisor, attorney, shareholder, officer, affiliate, member or employee of the Debtor shall ever owe any duty

to any Person (including any Creditor) other than the duties owed to the Debtor's bankruptcy Estate, for any act, omission, or event in connection with, or arising out of, or relating to, any of the following: (a) the Debtor's Bankruptcy Case, including all matters or actions in connection with or relating to the administration of the Estate, (b) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (c) any act or omission relating to the administration of the Plan after the Effective Date.

15.7.   <u>Binding Effect</u>. The Plan shall be binding upon, and shall inure to the benefit of the Debtor, the holders of the Claims or Liens, the holders of Interests, and their respective successors-in-interest and assigns.

15.8.   <u>Governing Law, Interpretation</u>. Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any Plan Documents without regard to conflicts of law. The Plan shall control any inconsistent term or provision of any other Plan Documents.

15.9.   <u>Filing of Additional Documents</u>. On or before Substantial Consummation of the Plan, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

15.10.   <u>Computation of Time</u>. Bankruptcy Rule 9006 shall apply to the calculation of all time periods pursuant to this Plan. If the final day for any Distribution, performance, act, or event under the Plan is not a Business Day, then the time for making or performing such Distribution, performance, act, or event shall be extended to the next Business Day. Any payment or Distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

15.11.   <u>Elections by the Debtor</u>. Any right of election or choice granted to the Debtor under this Plan may be exercised, at the Debtor's election, separately as to each Claim, Creditor, or Person.

15.12.   <u>Release of Liens</u>. Except as otherwise expressly provided in this Plan or the Confirmation Order, all Liens against any of the Assets transferred to the Debtor shall be deemed to be released, terminated and nullified without the necessity of any order by the Bankruptcy Court other than the Confirmation Order.

15.13.   <u>Rates</u>. The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

15.14.   <u>Compliance with Tax Requirements</u>. In connection with the Plan, the Debtor shall comply with all withholding and reporting requirements imposed by federal, state and local Taxing Authorities and all Distributions under the Plan shall be subject to such withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed Claim or Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the

satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution under the Plan.

*[The remainder of this page has been left intentionally blank.]*

DATED:  May 6, 2024.

Respectfully submitted,

HIS STORY DEVELOPMENT LLC


By:  _/s/ Bruce Lazarus_
Bruce Lazarus
Managing Member of Evergreen Five LLC, the
Managing Member of His Story Development LLC

APPROVED:

By:  _/s/ John Paul Stanford_
        John Paul Stanford
        State Bar No. 19037350

QUILLING, SELANDER, LOWNDS,
WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 871-2100
Facsimile: (214) 871-2111
Email: jstanford@qslwm.com

ATTORNEYS FOR DEBTOR
AND DEBTOR-IN-POSSESSION